United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA N. FATE, an individual, | No. C 05-02034 SI |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

Now before the Court are the parties' cross motions for summary judgment on plaintiff's complaint seeking judicial review of the denial of her claim for Social Security disability benefits. Having carefully considered the parties' arguments, the Court GRANTS plaintiff's motion for summary judgment, DENIES defendant's motion for summary judgment, and REMANDS this case to the Social Security Administration ("SSA") for further proceedings.

## BACKGROUND

### I. Procedural History

On May 28, 2003, plaintiff Anita Fate filed a claim with the SSA under Title II of the Social Security Act for disability insurance benefits, claiming disability due to constant fatigue and pain from fibromyalgia, and memory loss. Administrative Record ("AR") 64-67, 71. The claim was initially denied on September 8, 2003, and again denied upon reconsideration on December 29, 2003. AR 26-29, 33-37. At plaintiff's request, plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on June 2, 2004. The ALJ issued a decision denying plaintiff's claim for benefits on August 27, 2004. AR 14-22. Plaintiff requested administrative review, but was denied by the Appeals

Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner").  AR 4-6.

Plaintiff subsequently sought judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), and filed a summary judgment motion on December 31, 2005.  Plaintiff's grounds for summary judgment are: (1) the ALJ erred in finding that plaintiff was able to perform a range of jobs in the national economy; (2) the ALJ erred in failing to either attach a Psychiatric Review Technique form or incorporate its mode of analysis into his findings and conclusions; and (3) the ALJ's finding that plaintiff's subjective complaints were not credible was not supported by substantial evidence.

Commissioner Barnhart filed a cross-motion for Summary Judgment on January 31, 2006.  The Commissioner contends that the ALJ properly determined plaintiff was not disabled, and that the ALJ properly evaluated the plaintiff's credibility regarding her subjective complaints.

## II.     Plaintiff's Testimony at the Hearing

Plaintiff was born on October 23, 1956, and was forty-seven years old at the time of the June 2, 2004, hearing before the ALJ.  AR 200.  Plaintiff is a college graduate who has also taken some courses in early childhood education.  *Id.*  In the last 15 years, plaintiff has worked as a waitress, a teaching assistant, and as a proofreader.  AR 201-204.  From 2002 to 2003, plaintiff was on California state disability for one year because of fatigue, aches, and frequent sickness.  AR 204.  Beginning in November 2003 and through the time of the hearing, plaintiff worked approximately 12 hours a week at a vintage clothing store as a retail clerk.  AR 205.  Plaintiff was allowed flexibility with her work schedule because she had difficulty working full-time.  AR 205-206.

Plaintiff testified that she was first diagnosed with fibromyalgia in 1993 or 1994, after being sent to a specialist and going through "many many tests" for "months and months."  AR 208.  Plaintiff testified that she is prevented from working full-time because of unrefreshed sleep, constant pain, and worsening fatigue.  AR 208-209.  Plaintiff has been working part-time, but because of her steadily worsening condition, she can no longer work "two, three, four days in a row," being too fatigued after

2

1  a single day of work. AR 209.  Plaintiff describes the pain in her neck as feeling as if she had "a knife
2  in [her] neck all the time," which makes it difficult for her to stand straight, concentrate, or sit. AR 211.
3  She also has pulsing pain in her shoulders, arms, wrists, and fingers, and throbbing pain in her lower
4  back, hips, and knees. *Id.*  Plaintiff also suffers from depression, because of her pain and fatigue
5  condition. AR 213-214.  Plaintiff's MRI also shows that she has a herniated disc.  AR 214.  Lastly,
6  plaintiff claims that her memory is bad.  AR 219.

7  Plaintiff has been prescribed Prozac and Flexeril for her depression, pain and fatigue.  She
8  discontinued use of these drugs because they made her groggy, only gave her temporary relief, and
9  because she "wasn't feeling any real relief from the pain and fatigue." AR 210 and 212.  Plaintiff also
10 sought treatment at the Chronic Pain Management Program.  AR 219.

### III.  Medical and Third Party Evidence

#### A.  Treating Physicians

On March 6, 2002, plaintiff saw Dr. A. Silva regarding pain in her shoulders and arms, constant pain in her inner thigh radiating down to mid-calf that grew worse with ambulation, increased fatigue since she began working 5 days per week for 4.5 hours a day, and vertigo. AR 181. Dr. Silva noted that plaintiff was on Synthroid and Flexeril, and diagnosed plaintiff with fibromyalgia, hypothyroidism, and migraines. *Id.* Plaintiff told Dr. Silva that her sister was recently diagnosed with mixed connective tissue disease and that she wanted a complete work up. *Id.* Results from a musculoskeletal examination were tenderness over her bilateral second rib, bilateral trapezius, bilateral medial epicondyles, bilateral gluteals, and a negative straight leg raising test. AR 182. Dr. Silva ordered laboratory tests. *Id.*

Plaintiff's primary care provider is physician Dr. Teresa Caron.  Plaintiff saw Dr. Caron regarding her depression on April 17, 2002. AR 179-180. Plaintiff told Dr. Caron about her feelings of total hopelessness and of suicidal thoughts during her last premenstrual cycle. AR 179. Dr. Caron's exam found plaintiff to be "thin" and "tearful." *Id.* Dr. Caron recommended an increased dosage of Prozac and referred her to C. Hom, Ph.D. and to Dr. Donald A. Pierce for further evaluation. AR 180.

On May 14, 2002, plaintiff saw Dr. Pierce, a rheumatologist, for a consultation about fibromyalgia. AR 176-177. Dr. Pierce found tender points in plaintiff's periscapular and trapezius. AR 177. Dr. Pierce also recommended stretching exercises and 2.5 to 5 milligrams of Flexeril. *Id.*

C. Hom, Ph.D., a behavioral medicine specialist, met with plaintiff on May 20, 2002. AR 175. She noted that plaintiff was suffering from chronic fatigue and fibromyalgia, increased premenstrual symptoms, depression, and financial problems. *Id.* Hom diagnosed plaintiff with depression and prescribed Prozac. *Id.* Plaintiff saw Dr. Hom on at least three occasions in the following two months. *See* AR 173-174.

On August 5, 2002, plaintiff reported to Dr. Caron that she was feeling better with Prozac, but was nervous about increasing her dosage. AR 171. Dr. Caron noted that there was no real change in plaintiff's chronic pain from fibromyalgia. *Id.* Dr. Caron increased plaintiff's Prozac dosage to 20 milligrams. AR 172.

Dr. Ronald Gaines examined plaintiff on February 18, 2003. AR 164. Dr. Gaines found that plaintiff had 14 of 18 fibromyalgia tenderness points and his impression was that plaintiff had fibromyalgia with fatigue. *Id.* He suggested that plaintiff enroll in a nine week chronic pain program. *Id.*

On June 16, 2003, Dr. Caron examined plaintiff for knee pain and tingling in the hands. AR 156. Test results showed that there were minimal degenerative changes. AR 157. For plaintiff's fibromyalgia, she suggested continuing with the Chronic Pain Management Program that plaintiff was attending.[1] AR 156.

On August 2, 2003, an MRI of the cervical spine was taken because of plaintiff's history of chronic neck pain and tingling in the arm. AR 127. Dr. Caron found that there was some reversal of the normal lordotic curve and a posterior disc herniation at the C6/7 level. *Id.* A mild posterior disc bulge was found at the C4/5 level with mild right neuforaminal narrowing. *Id.*

---

[1] Plaintiff's records show that she participated Kaiser Pemanente's Chronic Pain Care Management Program. Records from the program dated February 19, 2003 through August 7, 2003 show that she attended the sessions and completed the series.

On June 1, 2004, Dr. Caron submitted a letter to the Social Security Administration. AR 196. Dr. Caron opined that it would be very difficult for plaintiff to work full time. *Id.* Since she began treating plaintiff in January 2000, plaintiff's symptoms had become worse – plaintiff fatigued more quickly, took longer to recover, and was in more pain. *Id.*

### B.    Third Party

Plaintiff's sister, Barbara Newman, submitted a "third party adult function report" on June 20, 2003. AR 98-105. Ms. Newman reported that she and her sister are close, and see each other once a month. AR 105. Ms. Newman also reported that plaintiff was very tired and sore after any activity and that she was too fatigued, stiff, and sore, to do moderate to heavy housework. AR 99, 101. Plaintiff also used to have a very active social life, but is now limited to her home and family. AR 103. According to Ms. Newman, plaintiff has difficulty standing for a long period of time, lifting, stair-climbing, using her hands, and walking. *Id.* Ms. Newman noted that her sister had become depressed over her illness, the loss of her ability to work, and the loss of a normal life in the past few years. AR 105.

### C.    Consultative Physicians

On August 5, 2003, plaintiff underwent a consultative evaluation by Dr. Jaskaran Momi at the request of the Department of Disability Determination Services. AR 128. Dr. Momi did not have any of the plaintiff's medical records. *Id.* Examination for the possibility of fibromyalgia, found generalized soreness in the muscles of the thigh, calf, and suprascapular region. AR 130. There was a tender point on the interior chest on the right side, but no tender points in the suprascapular region or back. *Id.* Dr. Momi concluded that plaintiff has a history of diagnosis of fibromyalgia. AR 131. Dr. Momi's impressions were that plaintiff has chronic pain, symptoms of fatigue and tiredness, but the examination did not find any tender points except for the tender point on the right side of the chest. *Id.* Based on the examination and the plaintiff's history, Dr. Momi found that plaintiff would be able to perform sedentary jobs requiring continuous sitting for two to three hours at a time with a total of eight hours

1 during the eight-hour shift, to stand or walk half an hour at a time with a total of one to two hours, and
2 to carry ten pounds of weight most of the time. *Id.*

3 On August 9, 2003, plaintiff underwent a psychological consultative evaluation conducted by
4 Ron Meister, Ph.D. AR 133. Dr. Meister reviewed a Daily Activity Questionnaire completed by the
5 claimant and also performed a mental status exam, and Wechsler Adult Intelligence Score-III, Bender-
6 Gestalt, Wechsler Memory Scale-III, and Trail-Making tests. AR 134-135. Plaintiff had good short-
7 term recall, being able to recall three out of three words given at the beginning of the session thirty
8 minutes later. AR 134. Plaintiff scored in the average range of intelligence. AR 135. The Wechsler
9 Memory Scale-III helps determine whether memory difficulties exist. Plaintiff's scores on the WMS-III
10 were Auditory Immediate Memory Index 91, Visual Immediate Memory Index 94, Immediate Memory
11 Index 91, and Working Memory Index 93. *Id.* Dr. Meister did not conclude whether these scores were
12 within the normal range. *See id.* Dr. Meister concluded based on plaintiff's report and his brief
13 examination that plaintiff's "somewhat depressed state and medical condition has affected her ability
14 to be cognitively sharp." AR 136. Additionally, Dr. Meister found plaintiff was significantly impaired,
15 and appeared to be cognitively affected when stressed by continuous mental tasks. *Id.*

16 There were two consultation requests regarding plaintiff's medical records.[2] The first, dated
17 September 6, 2003, opined that there was no evidence of any severe psychological impairment. AR 195.
18 The reviewing doctor found that plaintiff had good memory scores and a fine attention/concentration
19 score on her cognitive exams performed by Dr. Meister. *Id.* The doctor believed that Dr. Meister based
20 his conclusions regarding plaintiff's psychological functional limitation on plaintiff's story, not his actual
21 exam. *Id.* Another doctor opined that an examination which found plaintiff had diffuse tenderness did
22 not support a diagnosis of fibromyalgia, and that plaintiff's RFC should be medium. *Id.*

23 A doctor in the second consultation request, dated December 26, 2003, found that plaintiff was
24 credible for some degree of physical and psychological impairment. AR 192. The doctor found definite

---

[2] These consultative physicians did not examine plaintiff personally. They only examined plaintiff's medical records.

6

diagnoses for neck injury and fibromyalgia, non-severe psychological impairments, and affirmed the prior consultation's medium RFC finding. *Id.*

**IV.   The ALJ's Decision**

   **A.   The ALJ's Standard**

The ALJ must evaluate a claimant's disability status using a sequential five-step evaluation process established by the Social Security Administration. *See* 20 C.F.R. § 404.1520.

**Step 1.** First, the ALJ must determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 416.920. If the claimant is engaged in SGA, the claimant cannot be considered disabled, regardless of the claimant's medical condition, age, education or work experience. *See* 20 C.F.R. § 419.920(b).

**Step 2.** If the claimant is not engaged in SGA, the second step is to determine whether the claimant has a "severe" impairment. *See* 20 C.F.R. § 416.920(c). An impairment is "severe" if it has lasted or is expected to last for a continuous period of at least twelve months. *See id.*; *see also Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

**Step 3.** If the impairment is "severe," the ALJ proceeds to the third step, in which the ALJ determines whether the claimant's impairment meets or equals a listing of impairment in the Listing of Impairments in 20 C.F.R. Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(c). If so, the claimant is considered disabled, and the evaluation process ends. *See id.*

**Step 4.** However, if the impairment is not listed, the claimant must proceed to the fourth step where there is a residual functional capacity assessment ("RFC"). This is a standardized assessment of what a claimant can do on a sustained basis in a work setting despite her impairments. The RFC assessment interprets the medical evidence and classifies the claimant into one of five exertional work categories.[3] These exertional limitations consider the ability to do the basic physical work activities or

---

   [3]The five categories are: sedentary work, light work, medium work, heavy work, or very heavy work, and are defined at 20 C.F.R. § 416.967.

7

walking, standing, pushing, pulling, lifting, carrying, reaching, and handling. *See* 20 C.F.R. § 416.967.

The RFC assessment also considers non-exertional impairments such as pain and mental impairments.[4] To determine whether a mental impairment exists, the SSA is required to record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment in the case record. 20 C.F.R. § 404.1520a; 20 C.F.R. § 416.920a.

After the claimant has been classified into one of the exertional work categories, her RFC is compared to the exertional requirements of her former jobs ("past relevant work").  Past relevant work is work that has been performed within the last 15 years, lasted long enough to be learned, and was SGA.  If claimant's current RFC allows the claimant to return to a prior line of work, she is "not disabled."

**Step 5.**  Finally, if the claimant is able to show that a return to a prior line of work is not possible, the ALJ must then consider the claimant's residual functional capacity, age, education level, and past work experience to see if claimant is able to do any other work in the national economy.  The ALJ uses the Medical-Vocational Guidelines, also referred to as the "grids," located in Appendix 2, Subpart P, 20 C.F.R. Part 404, to determine whether or not "substantial gainful work exists for the claimant." *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).  The grids cannot be used as more than a framework or guide "if the characteristics of the claimant do not identically match the description in the grid." *Hurt v. Secretary of HHS,* 816 F.2d 1141, 1143 (6th Cir. 1987); *Smith v. Schweiker*, 735 F.2d 267, 272 n.4 (7th Cir. 1984) (stating that grids use as "guidance for decisionmaking" where they were not determinative of plaintiff's claim).

**B.     ALJ's Findings**

---

[4]Non-exertional impairments are impairments that do not generally affect a claimant's capacity to carry out strength requirements of jobs.  Examples of non-exertional impairments are mental impairments and postural and manipulative limitations, pain, dizziness, weakness, and the side effects of medication.  20 C.F.R. § 404.1545; 20 C.F.R. § 416.945.

8

The ALJ found that plaintiff was not entitled to disability insurance benefits after reviewing the record and applying the sequential evaluation process set forth above. In Step 1, the ALJ found that the plaintiff had not engaged in SGA since the disability onset date. AR 14. In Step 2, the ALJ looked to the medical records and found that the plaintiff's impairments of fibromyalgia, a herniated nucleus pulposus at C6/7, and depression were "severe" under the 20 C.F.R. § 404.1523. AR 18. In Step 3, the ALJ found that the impairments "were not attended with the specific clinical signs and diagnostic findings" to meet or equal the listings in the Listing of Impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.*

In Step 4, the ALJ considered both the plaintiff's non-exertional limitations as well as her exertional limitations. Because the claimant's impairments included mental or psychological difficulties, the ALJ had to either complete a Psychiatric Review Technique form ("PRT Form") or to include the findings that would have been in the PRT Form in a narrative fashion, indicating to what degree the claimant's impairments affected her abilities under the Section III of the PRT Form, Subpart A: "'B' Criteria of the Listings." The ALJ found that plaintiff had mild restriction on activities of daily living, moderate difficulties in maintaining social function, moderate deficiencies in concentration, persistence, or pace, and insufficient evidence of episodes of decompensation.

The ALJ also considered the plaintiff's subjective allegations regarding her functional limitations and ability to work and found them not fully credible in light of the medical evidence and other evidence of record. AR 19. The ALJ found plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments overstated when viewed objectively and taken as a whole. Also, the ALJ felt that the medical evidence did not entirely support the plaintiff's complaints.

In arriving at the above conclusions, the ALJ considered plaintiff's daily living activities, finding that the physical and mental capabilities required in performing many of the household tasks and social activities replicate those necessary for obtaining and maintaining employment. The ALJ also examined the plaintiff's testimony regarding the location, duration, frequency, and intensity of her pain and other symptoms, testimony regarding factors that precipitate and aggravate her symptoms, prescription

9

medications and any side effects, and testimony regarding other forms of treatment she tried. Lastly, the ALJ considered the third party adult function report completed by plaintiff's sister, Barbara Newman, which he found to be of limited probative value having been largely based on what plaintiff told her sister.

The ALJ weighed all these subjective allegations against the medical and other objective evidence and found that while the impairments limit the plaintiff, they "are not likely to produce the intensity, persistence and limiting effects to the degree that she alleges." AR 20. The ALJ found plaintiff's testimony, taken as a whole, not fully credible. *Id.*

The ALJ next considered the administrative findings of fact made by the California administrative physicians and consultants, giving them the weight of nonexamining expert sources pursuant to 20 C.F.R. § 404.1527. AR 20. The ALJ considered the opinion of plaintiff's treating physician, Dr. Caron, to be more persuasive than the nonexamining expert sources, but found Dr. Caron's opinion was not controlling because her assertion that plaintiff was not capable of full-time work was supported by very little objective evidence. The ALJ found that the medical evidence was primarily a "litany of [plaintiff's] subjective complaints, and a record of the various medications and conservative palliative measures taken to address those complaints." *Id.* The ALJ found that there was little objective evidence in the form of laboratory and radiological findings, to show that there was an objective basis for the plaintiff's allegations. *Id.*

The ALJ next considered and rejected Dr. Meister's psychological consultative evaluation report. The ALJ found that Dr. Meister's conclusions were not supported by the test results because plaintiff's test scores were normal and demonstrated average intelligence. The ALJ also found that Dr. Meister's conclusion that the plaintiff's attention and concentration were affected by her fatigued condition was unfounded and seemed to be based on simple acceptance of the plaintiff's subjective allegations that she was tired from the testing. Similarly, the ALJ found the Dr. Meister's conclusion that plaintiff's depressed state and medical condition affected her cognitive sharpness was unfounded, especially when Dr. Meister found that plaintiff showed no disturbance of thought or mood. AR 20-21. The ALJ

concluded that the assessment that plaintiff would need 24 months to adjust to her impairments before returning to work was without factual basis and outside Dr. Meister's expertise.

Considering all of the above in Step 4, the ALJ found that the plaintiff's RFC was "unskilled (simple repetitive tasks) sedentary work." AR 21.  The ALJ explained that sedentary work was lifting no more than 10 pounds, and occasional walking and standing, and that unskilled work was work that does not require "continuous mental tasks" and is not "cognitively challenging." *Id.*  The ALJ found that because plaintiff's past relevant work was "skilled and semi-skilled," her RFC did not allow her to return to performing any of her past relevant work. *Id.*

In Step 5, the ALJ found that because "[plaintiff] was able to perform a range of sedentary work (such as bench assembly and small products inspection) and because plaintiff's age, education, and work experience, a finding of 'not disabled' was supported by the framework of Medical-Vocational Rule 201.21." AR 21.  Finally, the ALJ concluded that there were a significant number of jobs existing in the national economy that the plaintiff would be able to perform.

## LEGAL STANDARD

This action comes before the Court for judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act.  The statute authorizes judicial review "after any final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g).  The Court may conduct only a limited review of the final decision and may disturb the decision "only if it is not supported by substantial evidence or if it based on legal error." *Ukolov v. Barnhart,* 420 F.3d 1002, 1004 (9th Cir. 2005).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Even if substantial evidence supports the ALJ's factual findings, his decision must be set aside if improper legal standards were applied in reaching that decision. *See Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002).

When a reviewing court concludes that the ALJ's findings are based on legal error or not supported by the record, the court may set aside the decision and direct payment of benefits or remand

11

the case for a new hearing. *See Sprague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Where, however, a rehearing would simply delay receipt of benefits, reversal is appropriate. *See id.* The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *See id.; see also Sprague,* 812 F.2d at 1232.

**DISCUSSION**

**I.    The ALJ's Finding that Plaintiff's Subjective Complaints Were Not Credible**

Plaintiff argues that the ALJ incorrectly evaluated the credibility of plaintiff's testimony regarding her functional limitations and ability to work, as well as the intensity, persistence, and limiting effects of fibromyalgia. Plaintiff challenges the ALJ's credibility finding on two grounds: (1) that the ALJ ignored the nature of fibromyalgia, which can only be diagnosed on the basis of a patient's subjective reports of pain and other symptoms, and (2) there was legal error when the ALJ considered the plaintiff's daily activities in discrediting the plaintiff's credibility.

To evaluate the intensity and persistence of pain and other symptoms, an ALJ considers a claimant's medical history, medical signs, laboratory findings, and doctor's statements regarding how the symptoms affect the claimant. *See* 20 C.F.R. § 404.1529(a). The ALJ then determines the extent the claimant's alleged functional limitations and restrictions can be reasonably be accepted as consistent with medical signs, laboratory findings, and other evidence. *Id.* Subjective testimony about the intensity and persistence of pain and other symptoms, and their effect on the claimant's ability to work, will not be rejected solely because the available objective medical evidence does not substantiate the statements. *See* 20 C.F.R. § 404.1529(c). An ALJ will also consider other evidence such as daily activities, location, duration, and intensity of pain, precipitating and aggravating factors, medications, other treatment, and other factors. *Id.*

The ALJ found that the claimant's testimony regarding the intensity, persistence, and limiting

12

effects of her condition to be overstated and unsupported by the medical evidence, and that her subjective allegations regarding her functional limitations and ability to work were not fully credible in light of the medical evidence. AR 19. In arriving at that conclusion, the ALJ considered plaintiff's testimony regarding her pain, daily activities, factors that precipitate and aggravate her symptoms, prescription medications, other treatment, and lay witness opinion, and found that plaintiff's testimony was not credible because her subjective complaints were not supported by sufficient objective evidence. AR 19-20. As the ALJ discussed:

> The medical evidence of record is primarily a litany of claimant's subjective complaints, and a record of the various medications and conservative pallative measures taken to address those complaints. *There is precious little objective evidence that shows, by laboratory and radiological findings, that there is an objective basis for [plaintiff's] allegations,* aside from the x-ray evidence of the herniated nucleus pulposus at C6/7, which does not explain the bulk of her FMS [fibromyalgia syndrome] symptomatology.

AR 20 (emphasis added).

### A. The ALJ's Finding of Lack of Objective Medical Evidence Supporting Plaintiff's Subjective Pains Reveals the ALJ's Lack of Understanding of Fibromyalgia

The ALJ's finding that there was "precious little" objective evidence to support the plaintiff's fibromyalgia symptoms in the form of laboratory and radiological findings shows the ALJ's lack of understanding of fibromyalgia, as there are no laboratory and radiological findings that can diagnose or assess the condition. The diagnosis and treatment of fibromyalgia necessarily relies on a patient's subjective reports of pain. As the Ninth Circuit recently explained:

> [F]ibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The "consensus" construct of fibromyalgia identifies the syndrome as associated with generalized pain and multiple painful regions. Sleep disturbance, fatigue, and stiffness are the central symptoms, though not all are present in all patients. The only symptom that discriminates between it and other syndromes and diseases is multiple tender spots, which we have said were eighteen fixed locations on the body that when pressed firmly cause the patient to flinch. The diagnosis is now based on patient reports of a history of pain in five parts of the body, and patient reports of pain when at least 11 of 18 points cause pain when palpated by the examiner's thumb. Although the Mayo Clinic states that the syndrome is neither "progressive" nor "crippling," the symptoms can be worse at some times than others. Objective tests are administered to rule out other diseases, but do not establish the presence or absence of fibromyalgia.

13

*Jordan v. Northrup Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 872 (9th Cir. 2004) (footnotes and quotation marks omitted).[5]

While the ALJ discussed and considered the plaintiff's medical records, he discounted them because the doctors based their opinions and treatment on plaintiff's subjective reports of pain.[6] For example, in analyzing Dr. Silva's diagnosis of fibromyalgia, the ALJ wrote: "Laboratory tests were taken, but all were within normal limits. Despite the lack of objective of objective findings, Dr. Silva diagnosed claimant as having fibromyalgia syndrome (FMS) . . . and prescribed Synthroid and Flexeril based entirely on claimant's subject complaints." AR 15. The ALJ's opinion failed to consider that the lack of laboratory and radiological tests available to support plaintiff's pain testimony was due to the very nature of the condition – the diagnosis and treatment of fibromyalgia necessarily relies on a patient's reports of pain.

The Court REMANDS this case to the ALJ for rehearing regarding the nature of plaintiff's diagnosis of fibromyalgia, and for reconsideration of the plaintiff's medical evidence, pain testimony, and functional limitations in accordance with this order. If the ALJ finds that some form of objective testing is available to test plaintiff's pain or functional limitations due to fibromyalgia, the ALJ should allow plaintiff to provide results of such testing, and/or direct plaintiff to submit to an examination conducted by the SSA. *See* 20 C.F.R. 404.1529(c)(2) (the SSA must always attempt to obtain objective medical evidence).

**B.   The ALJ Correctly Considered Plaintiff's Daily Activities in his Analysis of Credibility, but Failed to Consider Whether These Activities Were Substantial.**

---

[5]*See generally* Mayo Foundation for Medical Education and Research, *Fibromyalgia: Screening and Diagnosis, at* http://www.mayoclinic.com/health/fibromyalgia/DS00079/DSECTION=6 (last modified January 27, 2005). The Mayo Foundation website explicitly states that "there isn't a single, specific diagnostic laboratory test for fibromyalgia." *Id.*

[6]On review of the medical evidence, the ALJ noted that the plaintiff had been diagnosed with fibromyalgia. AR 18. However, the ALJ discounted the doctors' opinions regarding plaintiff's functional limitations and the intensity of plaintiff's own subjective complaints about her pain and her functional limitations, primarily because of the lack of objective evidence available regarding her condition and the pain she suffers. AR 19-20.

14

The SSA regulations allow an ALJ to consider other evidence, such as a claimant's daily activities, in evaluating the severity of a claimant's impairments. *See* 20 C.F.R. 404.1529(c)(3). The ALJ examines a claimant's daily activities to determine whether the ability to perform such activities is transferable to the work environment.

> [M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication. Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.

*Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff argues that there was legal error when the ALJ failed to considered whether the plaintiff could perform the daily activities on a sustained basis.

The Court finds no legal error in the ALJ's consideration of plaintiff's daily activities in his credibility assessment. However, the ALJ's finding that these activities serve to discredit plaintiff's allegations of pain is not supported by substantial evidence. The ALJ based the bulk of his consideration of plaintiff's daily activities on Exhibit 5E (AR 92- 96), a self-report dated a year before the hearing. The ALJ noted that the plaintiff could perform activities such as light household chores, cooking, and shopping, with the help of her husband and her daughter. AR 19. Though the ALJ noted plaintiff's allegations of pain and exhaustion, he did not appear to give weight to plaintiff's statements regarding the difficulty she had in completing her daily tasks or to plaintiff's inability to sustain her activities for long periods of time.[7] As discussed above, the ALJ improperly discredited plaintiff's subjective complaints based on the lack of objective evidence supporting her claims. The Court therefore REMANDS for reconsideration of the plaintiff's daily activities in accordance with this order.[8]

---

[7] Plaintiff claims that she needs help completing her chores because she exhausts easily and quickly after sustained activity. She has pain in her knees and wrists. She must lie down often and gets dizzy easily. Although plaintiff cooks, her husband has to cut or chop, or open jars because of her sore wrists. While plaintiff shops, she cannot carry heavy bags and is limited to short trips. Plaintiff's husband does most of the cleaning, and plaintiff helps with light cleaning once in a while. AR 93.

[8] Because the ALJ's credibility assessment regarding plaintiff's non-exertional limitations of pain necessarily affects the outcome at Step 5, the Court does not reach plaintiff's challenge to the ALJ's determination that substantial gainful work that plaintiff could perform existed in the national economy.

## II. Psychiatric Review Technique Form

Plaintiff also argues that while the ALJ's written decision incorporated his conclusions based on the Psychiatric Review Technique (PRT) form, he failed to make those findings with the necessary background for a reviewing court to understand those findings. The Social Security regulations require:

> At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(2) (2005).

The ALJ's decision must rate the degree of functional loss resulting from the mental impairment for four areas of function considered essential to work performance. 20 C.F.R. 404.1520a(c). These areas are: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c). The ALJ then determines the severity of the mental impairment. 20 C.F.R. § 404.1520a(d).

The ALJ found that plaintiff had "mild" restriction in her activities of daily living; "moderate" difficulties in maintaining social functioning; "moderate" deficiencies of concentration, persistence or pace; and that there was "insufficient evidence" of any episodes of deterioration or decompensation. AR 18-19. Although the ALJ did not state it explicitly in his decision, such ratings would lead to a finding of severe mental impairment based on the technique discussed in the regulations. *See* 20 C.F.R. § 404.1520a(d)(1) (if rated "none" or "mild" in all areas, then impairment is not severe).

The Court finds that the ALJ did not err. The Court is able to determine whether the ALJ's ratings were reasonable and supported by substantial evidence because the ALJ noted and discussed plaintiff's depression (AR 15), plaintiff's claims of memory and concentration problems (AR 15 and 17-18), the results of plaintiff's intelligence and memory tests (AR 20-21), and examined plaintiff's daily activities and social activities (AR 19). The ALJ determined the ratings and findings with the

16

prerequisite background for this Court to review those findings.

## CONCLUSION

The Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's motion. The Court REMANDS plaintiff's case to the Social Security Administration (Docket Nos. 17, 20).

Dated: June 8, 2006

SUSAN ILLSTON
United States District Judge

17